this is the case on the dot. Two dash 16 dash 0162. People of the state of Oklahoma, plaintiff, Alan Lee, Chief Justice Knapp, defendant's appellant. Arguably, the one who has the defendant's appellant is defendant J. Boyd. And the one who has the plaintiff, Alan Lee, Mr. Richard S. Blunt. Thank you, Mr. Boyd. You may proceed. Good morning, Your Honor. Andy Boyd for the State Appellant Defender's Office on behalf of Post-Conviction Petitioner Justin Knapp. If it pleases the Court and Counsel. My intention today is to focus on the issue that we raised regarding Mr. Knapp's Post-Conviction Petition, and simply to stand on our supplemental briefs regarding the appeal fee issue. I did notice that this Honorable Court discussed that issue fairly thoroughly during this last argument. I certainly am prepared to answer any questions that this Court might have on that issue, though. Our central argument here is that Mr. Knapp has presented the gist of a constitutional claim that would affect the defense counsel. And he did that by alleging that his decision not to testify at trial was involuntary. He alleged that defense counsel was aware that he wanted to testify about certain matters, and also that his proposed testimony would have undermined the State's theory of the case that this alleged attack was a result of a gang dispute. What's his defense? I'm sorry, go ahead. Why does that matter? Motivism doesn't matter. I mean, the State doesn't have to prove motive, correct? The State does not have to prove motive, and that's a fair question, Your Honor. The reason that we think it matters is because the State's theory of the case was that this incident was the result of a gang dispute. The State made much of that during its opening statements and during its closing arguments, and presented evidence, by the way, police officer testimony, that all these individuals were either involved with or somehow affiliated with gangs. And so the State certainly thought that this was important enough to make a significant issue of during trial, and then the State argued that this was a result of a gang dispute. Now, you'd be absolutely right, the State doesn't have to prove motive, but the State certainly thought that it was important enough to make it one of the central themes of their case. And what Mr. Knapp is proposing here in his post-conviction petition is that the State's theory of the case was off-base, and he could have presented some testimony that would have at least challenged that. And how would that have affected the outcome of the verdict in the case? Well, it's at least conceivable. Is there a reasonable probability or possibility the defendant may have been acquitted? Well, again, a fair question. And I think we need to understand where we are here in this process and answer where the first stage of post-conviction proceedings, where all we have to show is that it's arguable that counsel's performance was sufficient and that it's arguable that this deficiency may have somehow prejudiced the case. In other words, that it's arguable that the result of the trial may have been different. And again, how is that possible? First of all, because the State made so much of this during the trial that this was a result of the gang dispute. And we also know that testimony about gangs tends to be an incendiary. Jurors sometimes don't like hearing that. There's no dispute that your client was involved, correct? Well, the dispute, at least as far as Mr. Knapp seems to be concerned in his post-conviction petition, is who actually was the one that stabbed Mr. Avencia. At the sentencing hearing, the defendant apologized for his behavior and asked for forgiveness for being involved. And said at the sentencing hearing that now he's getting out of the gangs, right? I don't recall the testimony from the sentencing hearing. That certainly sounds correct. That wasn't a dispute. It's in there, so how? If that was what, assuming that's what he told his lawyer, his lawyer was not going to put him on the stand and have him just say, I'm not in a gang. I was involved, but it was some other motive. Would he? Would that be good advice? Would that be good advice? I think, from the standpoint, again, from a first-stage post-conviction petition, what you have here is an uncorroborated defense. The defense didn't put on any evidence in this case. It was all state's evidence, and all of it pointed towards the state's theory of the case that this was the result of a gang dispute. And Mr. Knapp at least alleges that he was prepared to present some sort of evidence that would have counterbalanced that somehow. And there's case law. We cited this in our brief. There's case law in the effect that if you have an otherwise uncorroborated defense, and you have some sort of evidence that you can use to somehow attack the state's case, that you can be found ineffective for not presenting that evidence. But the only evidence would have been his testimony, right? Yes. And the defense attorney's advice to the defendant was, I wouldn't, you should, well, I mean, however you want to phrase it, whether you can't testify according to your claim or whether you shouldn't testify, because it's not corroborated. Right. I mean, isn't that sound strategy? You know, just the defendant getting up there saying, everybody else is, I mean, literally, everybody else is mentioning it, gang slogans, gang comments, and then your client gets on the stand and says, it was about a girl. How far does that go? I don't know, and that's an entirely fair question. The point is, at least from my point of view, and I think from Mr. Knapp's point of view, is that you got no other shot at that point. When you say, I don't know, the burden here is to establish a reasonable probability that the outcome may have been different to show you the prejudice brought up. Only that's argued. Let me ask you this question. How do you square your argument with the Supreme Court's statement in Brown and our succinct holding in Youngblood that unless the defendant makes a contemporaneous statement to the court, evidencing a desire to testify we must affirm the dismissal? How do you square your argument with our holding in Youngblood and the First District's holding in Coleman, which was a first stage dismissal, that the general rule is that advice not to testify is a matter of trial strategy that does not amount to ineffective assistance of counsel unless counsel refused to allow the defendant to testify, citing Youngblood. How do you square your argument with those cases? Well, as far as the first argument, the allegation that Mr. Napier made is that counsel in essence deceived him, made misrepresentations to him. And yes, he did say to the court, I've talked about this with counsel, I decided not to testify. We conceded that in our brief and of course I concede that now. But those representations that he made to the court at the time he's alleging now were the result of misrepresentations that were made to him by defense counsel. And I think the other thing to point out is that this was a young man in a very serious legal situation, probably extraordinarily nervous, if not outright scared. And he may have taken counsel's advice at face value. Maybe he should not have done that. But the allegation is that there were misrepresentations made by counsel that led to those representations that he made to the court. And that's why we would ask that this court not take those representations at face value. Had counsel, or had the defendant testified, he would have been impeached with priors as well, correct? I'm not entirely sure. He had gone to the penitentiary as a juvenile. Yes, then he certainly would have, yes. That's correct. Right. With regard to the second issue, the issue that we asked for additional briefing on. Right. Every district in the state has been awarding fees to the state in unsuccessful post-conviction cases, including this district. In fact, every justice on this court has authored either Rule 23 orders or published opinions in such cases where we've awarded fees in post-conviction cases. Were we wrong in all of those cases? Were your honors wrong? Not prior to 2013. Let me put it this way. It would not have occurred to me, I must admit, it would not have occurred to me to explore this issue had not this court ordered me to do that. And the plain language of the statute, the plain language of the statute at issue is, on appeal, this is on appeal, not in the trial court, but on appeal, the state is entitled to a $50 fee in every case where the state is called upon to prosecute or defend. And I will concede, as I did in my supplemental brief, that a surface-level analysis of this issue, which is all anybody had ever done because nobody had ever been asked to do that before, would certainly leave a reasonable person to believe that these fees were entirely proper because of the statute and because of what the Nichols Court said. When this honor of the court requested that we look into this further, we thought, gosh, we can make this argument that what we have here, and the key to this whole thing, in our view, is that there is a substantial difference between a criminal proceeding and a civil proceeding, just like there's a substantial difference between a criminal proceeding and a juvenile proceeding. And that's why the W.W. case is at least arguably relevant here because W.W. said, well, there hasn't been a criminal conviction, therefore, there's no affirmance of a criminal conviction. If there's not an affirmance of a criminal conviction, we shouldn't have the fee. And so our argument is that, well, post-conviction petitions are civil in nature. And because they're civil in nature, the end result of an unsuccessful post-conviction petition is not the affirmance of a conviction, therefore, the fees shouldn't apply. So to get back to your question, were your honors flat out wrong to have awarded this fee for the last how many ever years? Many years. In the same sense that somebody saying that two plus two equals five is wrong, no. No, because you had the statute and you had Nichols. But on second glance, on a deeper look, on closer analysis, we think we can at least make the argument that. On direct appeal, the defendant has as a matter of right, the right to appeal, correct? Yes. And those cases, the prosecution is initiated by the government, by the state, correct? Right. And in a post-conviction case, who initiates the action? It's the post-conviction petition. Right. So doesn't it make logical sense that the state should be entitled to the fee in a case where it's on the defendant who initiates the proceeding in the first place? You could certainly make that argument. That would certainly be a fair interpretation. I guess the only thing I could say is I would just fall back on the key distinction, at least that I found in my research on this. The central issue here is that post-conviction petitions are civil in nature. They're substantially different from criminal convictions. The first and fourth districts have applied the fee in 214-01 petitions, which are civil in nature. Right. The fee's not applied in those, so why won't it apply in post-conviction? For the reasons that we've outlined in our supplemental briefs. I honestly don't have anything beyond that. Oh, that's okay. Are all statutes logical? Are all statutes logical? I haven't read all statutes, so I don't know. Is justice in the universe logical? Sometimes it is, and sometimes it isn't. Well, are we supposed to make a ruling or a judgment based upon the interpretation of the statute, based upon logic, or based upon the standard that the Supreme Court tells us we should? In a perfect world, both. In the situation that we're currently faced with, I have to concede that I don't have the perfect answer to that question, because it appears, again, at first glance, that these fees are justified under Nichols. But when you take a look underneath the surface, it's at least an arguable that there's a substantial distinction between. Is it logical to equate civil collateral proceedings with a conviction in a criminal proceeding? I don't mean to go all Bill Clinton here, but that depends on your answer to the question. Is it material if the statute doesn't contain language provided for such assessment? Well, and that brings us to the Johnson case, and that, in my humble opinion, is the biggest. Johnson was trial fees. Pardon? Johnson was trial fees. Fees in the trial court, not in the appellate court. That was what its issue. And in Nichols and other Supreme Court cases, the fees that are applied are ordered, or the costs that are applied are ordered by the court that is reviewing the matter at the time. And the appellate court is the section we're talking about here, correct? Yes, yes, that's correct. So does Johnson have any relevance at all when the court was talking about the state's attempt to get fees in a habeas case? In my own personal view, the most significant takeaway was that the Johnson court pointed out that had the legislature wanted these fees to be applied to post-conviction petitioners, the legislature would have done that, and it didn't. And that, to me personally, was what was the biggest takeaway from Johnson. Johnson was a 214.01, correct? It was a civil petition. That sounds correct. And the state was trying to get fees in the trial court through the habeas provision. And a 214.01 is not a habeas. That was the point. And it's also not a post-conviction petition. You're absolutely right. That's correct. Was there a dicta in Johnson also that mentioned the fact that a post-conviction petition is the same quality, quantity, civil, collateral proceeding as a 214.01? I don't recall that. It did? It did. OK. Is it strictly or broadly interpreted if, in fact, a court says that in order to assess fees, it has to be referenced in the statute? Statutes in general ought to be strictly construed, is my understanding. Since the Supreme Court specifically imposed this fee in a post-conviction proceeding in Nichols, I mean, we would have to somehow determine or hold through Johnson and WW that the Supreme Court has implicitly overruled Nichols, correct? I would, again, in my own humble opinion, yes. If this arm of the court were to hold that these fees were inappropriate, it would have to somehow rule that Johnson or WW or some other case that I'm not aware of has somehow implicitly overruled Nichols. Because otherwise, we are more bound to follow Nichols. Absolutely. Yes. Certainly. Just to wrap up, Your Honor, very quickly, I do want to emphasize the limited relief that we're asking for here in this case, leaving the fees issue aside. We're not asking that this honorable court release Mr. Knapp. We're not even asking for an evidentiary hearing. All we're asking for is that this thing go back to the circuit court so that Mr. Knapp can be provided with an attorney, and he can have some conversations with this attorney. And this attorney, if this attorney deems it necessary, can craft an amended post-conviction petition that will place Mr. Knapp's allegations of ineffective assistance of counsel related to his decision not to testify, to place those things into their proper format. So the trial court then can address this in perhaps a more formal and systematic manner than it did in the first instance. And that's all that we're asking for, is that this thing go back for second state's post-conviction proceedings. If there's no other questions, thank you, Your Honors. Thank you. You'll have an opportunity to make your comment. Mr. London. Good morning, Your Honors. Good morning. Counsel. May it please the court, Richard London, on behalf of the people of the state of Illinois. Your Honors, the people are obviously well aware that this is a first stage dismissal. Defendant is correct that the standard is a gist. However, a gist is not pure, conclusory speculation. In this case, the evidence was overwhelming. Defendant was convicted because there were two witnesses, two of his actually close friends, testified to his activity. Whether or not there may have been some discussion or some problem relating to a girl, none of the other witnesses testified to that. And further, to the extent that there might have been another motive, as Your Honors have pointed out, the people don't need a prove motive. But more importantly, whether or not the actions themselves were gang related, there's no question that defendant would have brought gang related actions into it himself. Even in a first stage dismissal, we look at counsel's performance through the lens of the presumption that attaches that it was a result of strategy, correct? No question. And in this case, we have even more than we normally have. We have more than the normal presumption that when a defendant is carefully and thoroughly admonished by a trial court, that he says that, yes, I have, I'm aware of my right to testify, and I choose not to do so, which this court must affirm. Was Youngblood at first stage dismissal? I don't think Youngblood was, but some of the cases that have cited Youngblood have been. And more importantly in this case, we actually have the attorney interject and said, we had a long conversation all about this. Now, we then have clearly on the record the fact that defense counsel said, I gave my assessment. In my expertise as a defense attorney, here's what I'm suggesting. Defendant did not make a contemporaneous assertion that he wanted to. He's acknowledged that. He didn't raise it that way in his PC. He acknowledges it on appeal. What he does suggest is, well, there was a possible misrepresentation or he didn't understand. There was no mistake of law or fact that he's pointing to. His subjective interpretation that he somehow didn't understand something does not rise to a level of a misrepresentation. There was no misrepresentation by counsel. He gave his opinion. He advised his client. His client listened. If we were to allow a defendant on an appeal from a first-stage dismissal to basically say, well, my attorney misled me. I really wanted to. Or he should have guessed. I thought the allegation was that he was told he could not testify unless there was corroboration. Isn't that the allegation? It was so across the board, I'm not actually sure. I guess you could, that was one of the many. It was really more he misrepresented. And I think the allegation was that he was led to believe that. I don't believe he ever said that he may not testify. I think that the strong, even under a just standard, was that his attorney advised him that because there was no corroboration. It would not be a wise move to testify. But again, the language was more stronger misrepresentation. And you can interpret that as advice. I don't believe the defendant ever said, he told me I could not. If, indeed, the attorney said at some point, you cannot testify, that would be a misstatement of law. That's not what we have here. Well, isn't it a misstatement of law to say that you cannot testify without corroboration? If, indeed, he specifically. Because you can, obviously, testify with nothing other than your own testimony. If, indeed, the attorney said you may not testify without corroboration, that would be a misstatement of law. I don't believe defendant actually said that. Defendant kind of said, well, he misled me. I didn't understand. I was confused. And I interpret it as, I couldn't. Can we infer from the defendant's statement in elocution where he asked for forgiveness that his lawyer probably told him or could have told him, you can't just take this in and admit your guilt just because the state has a wrong motive? I'm not sure how much we can infer from elocution. But I think it is not an unreasonable interpretation. Well, he asked for forgiveness and said that he's getting out of the gangs. And he asked the trial court for, quote, unquote, to give him mercy. He asked for mercy. He implied that he was guilty. He's kind of apologizing to his, this wasn't just a victim. This was a longtime friend. It was a friend since, I believe, fourth grade. So yeah, there's a strong implication that he was guilty. He knew he was guilty. He was in a gang. Whether or not, as I said, there certainly is no evidence that a girl was or was not involved. But it doesn't matter in this case because we don't need to demonstrate what the motive was. To the extent that the defendant is now arguing, but the people made a big deal about it, the people made a big deal about it probably at least as much because of defendant's actions after the offense where he, when the police came to the scene to check, he has gas cans arguably burning some of the evidence. He runs into a house. The homeowners let the police in saying, they've never seen defendant before. They don't know who he is. And defendant starts threatening the homeowners, threatening to kill and or rape, kill the homeowner, kill one of the police officers, kill and or rape the female, kill and or rape the police officer's wife and children while he's screaming, shouting, and scowling racial, racial, I apologize, of course, gang related slogans. So there was no question that there was some gang interaction here. And it is not a circumstance where despite the concern that the courts have with bringing in gang activity, that that wouldn't have been appropriate in this case. Bolstered by the fact that defendant then later acknowledged at sentencing, I'm getting out of it. So there was no question. And as far as the fact that he may or may not have known co-defendant well, again, doesn't matter. That's not anything we need to demonstrate. We don't need to demonstrate that there was a plan ahead of time. The evidence clearly established that after the victim and another friend attempted to leave, that defendant and co-defendant followed them and they acted in concert to attack the victim. That's all we need at this point. There is no reasonable probability that even if defense counsel's fairly unassailable advice to not testify was not accurate, there is no reasonable probability, even under a JIST standard, that the outcome of this case would have been different. So you're saying that the right to testify is not a structural error? You actually have to prove that had he testified, he would have been found not guilty or that there's a probability that he would have been found not guilty? No. If he had specifically requested. Well, no. If he had specifically. I thought you were saying that there's no prejudice here. It's harmless error because the evidence is overwhelming. So even if he had testified, it would have made any difference. If defendant had made a contemporaneous assertion or had made clear to his attorney or the court that he chose, that he wanted to testify and was not allowed to, yes, that would be, in of itself, reversible and should be remanded for a second stage hearing. That's not what happened here. What happened is defendant is arguing that he was misled. In other words, he had a subjective misunderstanding. Well, is it strategy to tell? Is it effective? Competency of counsel to tell a defendant that he can't testify unless he's got corroboration? If that is, again, I'll repeat, if that is what the attorney said, if the attorney said you cannot testify unless you have corroboration, that is a misstatement of law. If that's the case, then. But you also said something to the effect that the record refutes this. How could it refute it if it was a conversation outside the record? I don't believe I said the record refutes it. I said I think that defendant never made that specific statement. Defendant basically says, I was misled, I misunderstood, therefore I'm going to interpret what my attorney told me as a statement that I couldn't testify. Well, let's put it another way. If a defendant waives his right to testify based upon faulty advice given by essentially an ineffective counsel, is that a basis for allowing the petition to go to the second stage? I guess it depends on how we interpret faulty. This, I mean, the courts have said that if it is a reasonable suggestion or a reasonable recommendation, we can't look at that. If we're saying it's faulty and that it's false, yes, then it should go to second stage. If we're saying it's faulty in that as defendant is arguing that, well, I'm sorry, I don't think defendant was arguing. I think one of your honors asked, like, well, what did he have to lose? That's not the standard that we judge. Again, then let's do away with first stage. Because at any point in time, if a defendant doesn't testify, defendant can only say, well, I guess I should have, so I'm going to argue that my attorney either told me not to or convinced me not to or persuaded me. Or told me that if I testified that the hand of God come out of a cloud in this atmosphere and strike me dead like witnesses in Tennessee during the 40s and 50s thought if they lied on the road. If indeed that was the case, then the case should be reversed and remanded for second stage proceedings. That's not what happened here. Is there any language in the defense petition or affidavit stating that he was told he could not testify? I don't know that specifically, Your Honor. If there is, then I would say, even though that is conclusory itself, then arguably, that might be sufficient. I don't know the answer to that. In Brown, the Supreme Court discussed the point that you were just making, that if this were the standard, every case would be open itself up. Exactly. An absolute contemporaneous objection or statement of those allegations are not considered. For all practical purposes, you would, any time a defendant doesn't testify, there would be no first stage proceedings in PC event. Yes, correct. And that was Justice McLaren. That's Brown, but Justice McClain, that was my prejudice aspect, was that here, when we don't have a definitive statement, we then say, OK, if the advice is faulty or bad, but not on the stake of law or fact, we then have, first of all, we have cases that says, well, no, we don't look any further. But that's when we look at a possible prejudice. There is no prejudice in an overwhelming case when we don't have that definitive statement. What's the point of using a benchmark such as strategy if the strategy is some ammoniated fertilizer? Well, that's why we have the two prongs. We have the prong. Two prong? Ammoniated sulfate? Professionally? Well, actually. But that's why we have the two prongs. We do look at first prong if it's bad advice. Here, there's really nothing to suggest it is or was. But again, there were other factors. Justice Burkett suggested he would then put himself to look at priors. But in addition, we then have the second prong. And as this Court is well aware, if we can examine on second prong, we don't even really look at first. And here it is. Even if it was arguably bad advice, would the outcome have been different? Would there have been prejudice? And the answer is no. The people don't concede and definitely think it was not bad advice or faulty advice. In this case. And the record, unlike most cases, demonstrates that counsel and defendant discussed this at some length. If I understand your argument, you're saying that the evidence is overwhelming. Whether or not a defendant does or doesn't testify is irrelevant. Is that correct? Correct. In this particular case. Not in general, if you want to say. No, I mean in general. Why wouldn't it be in general if the evidence is wouldn't change anything, then you just said that he hasn't satisfied the second prong. He hasn't established prejudice. And therefore, it's an affirmance. Or the dismissal of a petition at the first stage. No, because regardless, if defendant has demonstrated that he wants to testify, regardless of the overwhelming nature, he is entitled to do so. I mean, we're not disputing that. The question is here, without making that contemporaneous request, the record doesn't demonstrate that he told his attorney or the judge that he wanted to do so. And again, just with my apologies, I do not recall the specifics. My understanding, and I hope I'm correct, my understanding was that defendant never said counsel told me I couldn't. We can answer that question. Okay. Counsel. Do you want to comment on the fees? Yes, briefly. There's been discussion in both of the first two arguments that post-conviction is a civil remedy. It is. But it's a quasi-criminal remedy. It is, indeed, the affirmation of a criminal conviction. The W.W. case is clearly the opposite. W.W. said you are never convicted in the circumstances in that case. You have not had a criminal conviction, period. And the statute, the juvenile statute, is completely separate from it. If what you say is correct, why is habeas corpus included in these proceedings or the statutory fee schedule because, as I understand it, habeas corpus fees, even if they weren't included since 1907, they still could be collected even though they weren't allowed to be collected. And they weren't allowed to be collected in Nichols. Okay. What's the point of having habeas in there and saying, well, the others are there by implication when you're supposed to strictly construe a statute? Actually, what I hope is a reasonable answer for your honor. You're supposed to reasonably construe, strictly construe a statute. The statute relating to trial fees, the legislature, for whatever reason, specifically chose to include habeas. So, therefore, under a strict interpretation, the court in Johnson said, therefore, everything else is left out. As opposed to the separate section of appellate fees. The legislature did not leave out... It's an all-encompassing... It's an all-encompassing... Civil, criminal, whether it's... If the state's attorney is called upon to prosecute or defend, the state is entitled to fees. Arguably, but even more so, it does not leave out. So under a strict interpretation of the statute, it does not choose to leave out. So, after Nichols, to the extent they called in question, or after Johnson, if the Supreme Court or if the legislature believed that Johnson addressed the appellate, they could have chosen to change it, which indeed, for whatever reason, they have not. And as we know, as of July... I'm not sure of the exact date, but as of July of 2019, that is no longer a fee. Do you recall reading the statute on fees? Recently, yes. Not prior to this... Do you remember reading how the fees that are to be collected in the trial court are listed seriatim or in order? And then, later on, there is a listing of fees on appeal? I recall the general sequence... Would it be logical to assume that the reference relative to fees on appeal relate to those things which are listed that relate to trial? Or are you telling us that, no, it doesn't relate to what's in front of it, it relates to whatever might be in front of it? Which is, for instance, habeas corpus. So, if habeas corpus is there, then maybe you should be entitled to appeals or fees from appeals from habeas corpus. But then, by logic, you should also be entitled to appeals from things that aren't listed there upon which this assessment of fees is supposedly based upon. Answering an earlier question, if you're asking me, do I believe that all statutes or all cases are logical, the answer is, I'll be more blunt, no. However, we're not to interpret logic or supposition, we're to interpret the way the statute reads. In Nichols, the Supreme Court denied the $10 fee for the day spent at oral argument in the appellate court. Indeed. You've spent less than the day, but this would count as one day. Are you asking for a $10 fee for your argument today? We are not. We are asking the fee that, again, as two of the justices suggested have been granted for years, and Justice McLaren, I might suggest that in the Sherlock Holmes case of Silver Blaze... Yes, Silver Blaze. I'm familiar with Silver Blaze. Are you going to tell me that the dog barked in this situation? You're suggesting the dog did not bark there until... For 40 years. And please, I am not acquitting this court's request for us to brief this as a dog, but until the dog barked in this case with that request, the dog didn't bark. And therefore, logic, or at least Sir Arthur Conan Doyle would suggest that this fee is appropriate. One final question. You wouldn't get nervous from me. Would you concede that the trial court was... The trial court erred in its order citing race judicata? Yes. Yes, unfortunately. Of course, this court can affirm it on any basis. But yeah, that is why we did not brief that issue. That portion of the issue. Thank you. Thank you, Your Honor. Did you read Silver Blaze? I did. Before or after I referenced it? After you referenced it. I have read most of Doyle. After you referenced it, I... Again, I have it on my phone, and I read it shortly after. Good. I'm glad I'm taken seriously by at least one appellate prosecutor. I can assure you this Honorable Court is taken seriously by everybody in this room. I disagree. I can assure you this Honorable Court is taken seriously by everybody in this room and everybody that appears before us. The question I want to ask, in the petition, in his petition or in his affidavit, did the defense say he was told he could not testify? I heard Your Honor ask that question, and I happened to... I read the petition. I didn't see that in there. I happened to read just a couple pages of the petition because I thought there might be a question like that, and I went over it. I don't see it. I did not read the entire petition. I don't have the affidavit with me, but the petition basically says the petition was misled to believe that his right to testify was worthless. Yes. He was dissuaded from testifying. That's correct. Again, I have to look at the affidavit. That's correct. If there may be some allegation like that somewhere else in the petition, I don't think so. I brought what I thought were the pertinent pages of the petition, and I did not see it in there. I read it recently. I forgot to bring the petition, but I did not see that in there. That's why I was looking at Youngblood, Coleman, and Brown to see whether or not he had made any such statement. It's a fair point, Your Honor. Just a couple things to revive. The first thing I'd like to draw this Court's attention to is, and we've cited this case in our brief, is the Illinois Supreme Court's decision in Tate in 2012. In that case, the Court pointed out that trial strategy is not a proper consideration at the first stage of post-conviction petitions. What I hear the State to be arguing is that in this particular case, there actually was no misrepresentation. Trial counsel's advice actually was good advice. We don't know that yet. With all due respect to counsel, we don't know that yet because we're only at the first stage. All we've got are Mr. Knapp's allegations. We haven't even had a second stage hearing where there's an amended petition, much less an evidentiary hearing where these things can be fleshed out and we can get some evidence on exactly what the nature of the conversation between Mr. Knapp and his attorney was. We don't know. Again, with respect to counsel, that's why the State's brief is slightly off-kilter. The State argues this case as if it's already at the second or third stage, and it's not. It's only at the first stage. Well, if that's... As I understand your argument, then it would seem that, or that it would follow logically, that any post-conviction petition alleging ineffectiveness of counsel based upon the right to testify being improperly waived based upon either a lack of consent or a lack of knowing consent or intelligent consent would be required to go to the second stage unless there was an affidavit showing that it was frivolous. I suppose we would like it very much if Your Honor were to draw that bright... if this Court were to draw that bright-eyed rule, but I don't think that it's necessary for this Court to do that. I think this Court can decide this case on the facts before it. And what we have here, again, is a... When this incident happened, a young man who seems to be, at least from the evidence that was introduced at trial, perhaps not thinking as clearly as he should have been in a number of different situations, and he may have been intimidated. We don't know because we haven't had the evidence you're hearing yet. He may have been intimidated by counsel. He may have believed counsel for reasons that we just don't know yet. And that's why we're arguing that this thing, this particular case, should go to the second stage. And I don't believe that it's necessary for this Court to draw that bright-eyed rule, although it certainly could do that if it would like to. And I guess the last thing to point out is that the State argued that the evidence was overwhelming. I wouldn't concede that. I would concede that there was considerable evidence against my client presented at trial. And there was no evidence presented on his behalf. And that is one of the fundamental issues here. That's the problem. When you've got a situation where you have a client who is, frankly, in trouble at trial, it's your professional obligation as a defense attorney to prevent some sort of evidence to corroborate a defense. And that's what counsel didn't do here. At least that's what Mr. Knapp is alleging that counsel didn't do here. And that's why we're asking this Honorable Court to simply advance this thing to the second stage so we can get an attorney in here have these claims properly forewarned, properly addressed by the Court, perhaps even evidence you're hearing down the line to have these things fully hashed out. If there's any other questions, I'll be happy to answer them. If not, thank this Court very much. Thanks, Tom. Thank you. There will be a recess until, I believe, it's 1 o'clock a.m. for the last oral